# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALIA PICAZO and ARTURO URBINA,<br><br>         Plaintiffs,<br><br>v.<br><br>KIMBALL, TIREY, & ST. JOHN LLP,<br><br>         Defendant. | Case No.: 17cv1437 JM (BGS)<br><br>**ORDER GRANTING DEFENDANT'S SPECIAL MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT** |

Defendant Kimball, Tirey, & St. John ("KTS") moves the court to strike Plaintiffs' Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") claims pursuant to California's anti-SLAPP statute, and also moves the court for summary judgment of their Fair Debt Collection Practices Act ("FDCPA") claims. (Doc. No. 11-2.) Plaintiffs Rosalia Picazo and Arturo Urbina oppose both motions. The court finds the matter suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1) and, for the following reasons, grants Defendant's motions.

## BACKGROUND

In October 2001, Plaintiff Picazo, aka Roselia Naranjo, entered into a lease agreement with the Chicano Federation of San Diego ("CFSD"), a group that provides

1

affordable housing to low-income residents through the federal Department of Housing and Urban Development's HOME Investment Partnership Program ("HOME Program"). (Doc. Nos. 11-2 at 10, 13 at 8.)[1] In July 2004, Picazo entered into a new lease agreement with CFSD. In August 2015, Picazo renewed her lease by signing a lease addendum, also subject to the HOME Program. Each lease, including the 2015 addendum, required Picazo to verify her income annually, and "acknowledge[] that Tenant's failure to provide accurate information regarding such requirements (regardless of whether such inaccuracy is intentional or unintentional) or the refusal to comply with the request for information with respect thereto, shall be deemed a violation of this lease provision, and a material breach of the tenancy and shall constitute cause for immediate termination of the tenancy." (Doc. No. 11-3 ("Ruiz Decl.") Exh. 4.)

On December 29, 2015, the San Diego Housing Commission ("Commission"), which administers the HOME Program in San Diego, informed CFSD that Picazo had withheld information regarding her income and directed CFSD to issue Picazo a notice to terminate tenancy. (Ruiz Decl. Exh. 5.) As a result, CFSD issued Picazo a sixty-day notice of termination of tenancy on February 3, 2016. (Ruiz. Decl. Exh. 6.)

In May 2016, CFSD sent Picazo's file to KTS for possible legal action regarding Picazo's alleged failure to verify her income with the Commission. (Ruiz. Decl. ¶ 10.) KTS is a law firm. One service KTS offers, among others, is to collect debts for its clients. (See Doc. No. 13-2 ("Lickel Decl.") Exh. U.) CFSD retained KTS to evaluate the lease for legal action regarding Picazo's alleged failure to comply with the Commission's annual income certification. (Ruiz Decl. ¶ 10.)

On May 16, 2016, KTS issued Picazo a new sixty-day notice of termination ("Notice of Termination"), superseding the February notice. KTS declared a forfeiture of Picazo's lease based on the Commission's notice that Picazo had failed to report income from her

---

[1] The court will cite to the pagination provided by CM/ECF rather than original pagination throughout.

2015 employment. The Notice of Termination gave Picazo until July 18, 2016, to terminate her tenancy. (Doc. No. 11-10 ("Fortune Decl.") Exh. 1.) In response, Picazo met with CFSD personnel to inform them that she had already provided the documents needed to verify her income for 2015. (Doc. No. 13-1 ("Picazo Decl.") ¶ 21.) The Notice of Termination did not allege that Picazo owed any rent at this time.

Plaintiffs remained on the property and Picazo paid July 2016 rent in full. (Picazo Decl. Exhs. K–K.1.) On July 22, 2016, KTS initiated an unlawful detainer action against Plaintiffs on CFSD's behalf. (Ruiz Decl. ¶ 11.) In its complaint, KTS sought forfeiture of the lease agreement and damages for each day that Plaintiffs remained in possession from July 19, 2016, through entry of judgment. KTS did not select the box to seek past-due rent. (Doc. No. 11-12 ("RJN") Exh. A.)[2] During the course of discovery in the unlawful detainer action, KTS learned that Picazo's failure to report income was likely the result of an inadvertent mistake on her recertification documents, possibly due to a language barrier. Accordingly, CFSD asked KTS to voluntarily dismiss the unlawful detainer action. (Fortune Decl. ¶ 13; Ruiz Decl. ¶ 12.)

On July 17, 2017, Plaintiffs filed this action against KTS for violations of the FDCPA and Rosenthal Act. (Doc. No. 1.) In response, KTS filed the instant special motion to strike Plaintiffs' Rosenthal Act claims and motion for summary judgment on Plaintiffs' FDCPA claims. (Doc. No. 11.)

**LEGAL STANDARDS**

**I.  California Code of Civil Procedure Section 425.16 – Anti-SLAPP**

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." Makaeff v. Trump Univ., LLC, 715 F.3d 254, 261

---

[2] The court grants KTS's request for judicial notice of the verified unlawful detainer complaint. (RJN Exh. A.)

(9th Cir. 2013) (internal quotation marks omitted).

Although the statute providing for an anti-SLAPP motion is codified as a state procedural rule, anti-SLAPP motions can be used in federal court. See Batzel v. Smith, 333 F.3d 1018, 1025–26 (9th Cir. 2003); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003). However, an anti-SLAPP motion in federal court can only be used to challenge state-law claims. See Hilton v. Hallmark Cards, 599 F.3d 894, 901 (9th Cir. 2009); see also In re Bah, 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) (noting that the anti-SLAPP statute applies also to state-law claims asserted pendent to federal question claims) (citing Globetrotter Software, Inc. v. Elan Computer Grp., Inc., 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999)).

To prevail, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." Makaeff, 715 F.3d at 261. "The burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." Id.

A "prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c).

## II. Federal Rule of Civil Procedure 56 – Summary Judgment

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). But Rule 56 contains "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original).

In response to a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by

4

[its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal citations omitted). In other words, the nonmoving party may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). The court must examine the evidence in the light most favorable to the nonmoving party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), and any doubt as to the existence of an issue of material fact requires denial of the motion, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

# DISCUSSION

## I. California Code of Civil Procedure Section 425.16 – Anti-SLAPP

KTS brings a special motion to strike Plaintiffs' Rosenthal Act claims pursuant to California's anti-SLAPP statute. Under that statute,

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1). The court will first address whether Plaintiffs' claims arise from protected activity before turning to whether Plaintiffs have established a probability of prevailing on their claims.

### A. Plaintiffs' Rosenthal Act Claims Arise From Activity Protected Under California Code of Civil Procedure Section 425.16

First, KTS must "make a prima facie showing that [Plaintiffs'] suit arises from an act in furtherance of the defendant's constitutional right to free speech." Makaeff, 715 F.3d at 261. Plaintiffs' subjective intent in bringing the lawsuit is not relevant. See City of Cotati v. Cashman, 29 Cal. 4th 69, 74 (2002). Rather, "the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or of free speech." Id. at 78 (emphasis in original).

///

5

17cv1437 JM (BGS)

Plaintiffs allege that KTS violated the Rosenthal Act by filing an unlawful detainer action that claimed that Plaintiffs owed $17.26 for each day they remained in possession of the premises as of July 19, 2016, even though Plaintiffs had already paid July rent in full. According to Plaintiffs, filing the unlawful detainer action, "constituted a misrepresentation as to the amount or nature of an alleged debt." (Doc. No. 1 ¶ 32.) "Filing an unlawful detainer complaint is protected activity under the anti-SLAPP statute, as is service of a notice of termination preceding an unlawful detainer complaint." Ulkarim v. Westfield LLC, 227 Cal. App. 4th 1266, 1275 (2014); see also Birkner v. Lam, 156 Cal. App. 4th 275, 281 (2007) ("The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16."). Because Plaintiffs' Rosenthal Act claims are based on conduct protected by California's anti-SLAPP statute, which Plaintiffs do not deny, the burden shifts to Plaintiffs to establish a reasonable probability that they will prevail on their Rosenthal Act claims.

### B. Plaintiffs Have Not Established a Reasonable Probability That They Will Prevail on Their Rosenthal Act Claims

A cause of action that arises from protected activity is subject to dismissal unless the "plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). To establish the requisite probability, the plaintiff need only have "stated and substantiated a legally sufficient claim." Greka Integrated, Inc. v. Lowrey, 133 Cal. App. 4th 1572, 1580 (2005). "The court cannot weigh the evidence, but must determine as a matter of law whether the evidence is sufficient to support a judgment in the plaintiff's favor." Ulkarim, 227 Cal. App. 4th at 1274 (citations omitted). If the defendant presents evidence that establishes as a matter of law, not merely contradicts, that the plaintiff cannot prevail, such evidence will defeat the plaintiff's evidentiary showing. Id. at 1275.

The court will first address KTS's claim that the litigation privilege bars Plaintiffs' Rosenthal Act claims before turning to the merits of Plaintiffs' Rosenthal Act claims.

///

### 1. California Litigation Privilege

First, KTS argues that its actions are protected by the litigation privilege set forth in California Civil Code Section 47(b). KTS argues the alleged violations of the Rosenthal Act in the complaint, filing the unlawful detainer action seeking forfeiture of the lease and seeking damages, are all actions properly protected from attack by the litigation privilege. Plaintiffs argue that the Rosenthal Act prevails over the litigation privilege as the more specific statute.

#### a. The Rosenthal Act

Section 1788.17 of the Rosenthal Act establishes liability under California law for violations of the FDCPA. Cal. Civ. Code § 1788.17. The FDCPA, in turn, prohibits false or deceptive practices in connection with the collection of debts. 15 U.S.C. § 1692 et seq. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Id. § 1692(e).

In their Rosenthal Act claims, Plaintiffs allege that KTS violated sections 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692f, and 1692f(1) of the FDCPA by filing the unlawful detainer action against them. Cal. Civ. Code § 1788.17. Section 1692d prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Section 1692e prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," with violations of section 1962e(2) including the false representation of "the character, amount, or legal status of any debt." Section 1962e is violated under section 1962e(4) by the "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action," and is violated under section 1962e(5) by the "threat to take any action that cannot

legally be taken or that is not intended to be taken." Finally, section 1692f prohibits a debt collector from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," with violations of section 1962f(1) including the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### b. California Civil Code Section 47(b)

California Civil Code section 47(b) provides, in relevant part, that a privilege attaches to a publication or broadcast made in any judicial proceeding. The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." Rusheen v. Cohen, 37 Cal. 4th 1048, 1057 (2006). The litigation privilege "clearly protect[s]" the filing of a lawsuit. Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1249 (2007). However, the California Court of Appeal has held that the litigation privilege does not bar claims under the Rosenthal Act where the two statutes conflict. See Komarova v. Nat'l Credit Acceptance, Inc., 175 Cal. App. 4th 324 (2009). "The recognition of these exceptions has been guided by the rule of statutory construction that particular provisions will prevail over general provisions. If a statute is more specific than the litigation privilege and would be significantly or wholly inoperable if the privilege applied, the privilege will not shield violations of that statute." People v. Persolve, LLC, 218 Cal. App. 4th 1267, 1274 (2013).

### c. The California Litigation Privilege Does Not Apply Here

KTS argues that the litigation privilege bars Plaintiffs' Rosenthal Act claim. KTS asserts that although the litigation privilege does not apply where the Rosenthal Act is the more specific statute, here, there is no specific Rosenthal Act provision prohibiting the filing of an unlawful detainer action and seeking daily holdover damages. Plaintiffs argue that KTS falsely alleged a debt by claiming that Plaintiffs owed money for a past period of occupancy, thereby violating provisions of the FDCPA incorporated in the Rosenthal Act and creating a conflict between the Rosenthal Act and the litigation privilege. Furthermore, Plaintiffs argue that the litigation privilege does not apply because the Rosenthal Act is

8

always the more specific statute.

KTS relies on two cases to support its argument. The first, Nickoloff v. Wolpoff & Abramson, LLP, 511 F. Supp. 2d 1043 (C.D. Cal. 2007), is a pre-Komarova case that concerned the sufficiency of documentary evidence connecting the chain of title of the debt—evidence that was provided during a legitimate arbitration proceeding. Because Nickoloff predates Komarova and is a case the court previously declined to follow in Sial v. Unifund CCR Partners, No. 08cv905 JM (CAB), 2008 WL 4079281, at *5 (S.D. Cal. Aug. 28, 2008) (finding that the Rosenthal Act prevails over the statutory litigation privilege), the court declines to follow it now. The second is Boon v. Prof'l Collection Consultants, 958 F. Supp. 2d 1129 (S.D. Cal. 2013), in which the court applied the litigation privilege to a Rosenthal Act claim premised on a time-barred state court action. The court respectfully opts not to follow the decision in Boon because, as the court noted in Petley v. San Diego Cty. Credit Union, 2017 WL 385742, at *5 (S.D. Cal. Jan. 27, 2017), the court cited only pre-Komarova district court cases.

Furthermore, apart from Boon, only one other federal court decision since Komarova has applied the litigation privilege to Rosenthal Act claims. See Ordinario v. LVNV Funding, LLC, 2016 WL 852843, at *2 (S.D. Cal. Mar. 4, 2016). All other cases have rejected that approach. See, e.g., Welker v. Law Office of Daniel J. Horwitz, 699 F. Supp. 2d 1164, 1174 (S.D. Cal. 2010) (Gonzalez, J.); Huy Thanh Vo v. Nelson & Kennard, 931 F. Supp. 2d 1080, 1097 (E.D. Cal. 2013) (noting in 2013 that following Komarova, "not a single federal court has found Rosenthal Act claims to be barred by the litigation privilege"); Holmes v. Elec. Document Processing, Inc., 966 F. Supp. 2d 925, 937 (N.D. Cal. 2013); Derr v. Kimball, Tirey & St. John LLP, 2012 WL 12874923, at *3 (S.D. Cal. Aug. 14, 2012) ("Applying the litigation privilege would . . . eviscerate the Rosenthal Act.").

Given this weight of recent authority, the California Court of Appeal's opinions in Komarova and Persolve, and this court's own decisions in Sial and Petley, the court holds that the litigation privilege and the Rosenthal Act conflict in this case and, consequently,

the Rosenthal Act must prevail.[3]

### 2. KTS as a "Debt Collector" Under the Rosenthal Act

KTS asserts that Plaintiffs cannot prevail because KTS is not a debt collector under the Rosenthal Act. The definition of "debt collector" under the Rosenthal Act expressly excludes "an attorney or counselor at law." Cal. Civ. Code § 1788.2(c). KTS argues that law firms are included in that statutory exemption, largely based on the California Court of Appeal's opinion in Carney v. Rotkin, Schmerin & McIntyre, 206 Cal. App. 3d 1513 (Ct. App. 1988).[4] (See Doc. No. 11-2 at 23.) The court joins the majority of federal judges in California and holds that the Rosenthal Act does apply to law firms.[5] See, e.g., Lyon v. Bergstrom Law, Ltd., 2017 WL 2350447 (E.D. Cal. May 31, 2017); Davis v. Hollins Law, 942 F. Supp. 2d 1004, 1008, 1011 (E.D. Cal. 2013) (collecting cases and holding that "the 'attorney' exemption from the definition of 'debt collector' under the Rosenthal Act does not extend to 'law firms'"); see also Huy Thanh Vo, 931 F. Supp. 2d at 1091–92 (analyzing Carney and finding it "is simply not persuasive precedent for the proposition that the Rosenthal Act exempts law firms from the definition of 'debt collector'").

///

///

---

[3] Because the FDCPA preempts California's litigation privilege, FDCPA claims are not subject to the privilege. See, e.g., Oei v. N. Star Capital Acquisitions, LLC, 486 F. Supp. 2d 1089, 1098 (C.D. Cal. 2006). Plaintiffs argue that because FDCPA remedies are not subject to the litigation privilege, by extension, they are not subject to the privilege when incorporated in the Rosenthal Act. (See Doc. No. 13 at 14.) KTS did not rebut this argument, nor any other argument raised by Plaintiffs on the litigation privilege, in its reply brief. While the court declines to decide the issue on this basis, it recognizes the appeal of Plaintiffs' argument and believes it further supports the court's conclusion.

[4] The court grants KTS's request for judicial notice of portions of the clerk's transcript on appeal in Carney, including portions of the record and filings. (RJN Exhs. B, C, D, E.)

[5] The court grants KTS's request for judicial notice of the legislative history of the Rosenthal Act filed in a case before the United States Bankruptcy Court for the Eastern District of California, (RJN Exh. F), but finds KTS's argument that the legislative history of the Rosenthal Act supports its interpretation of "debt collectors" unpersuasive.

### 3. Underlying Litigation as Collection of a Consumer Debt

The Rosenthal Act concerns "consumer debt," which it defines as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(f). A "consumer credit transaction" is "a transaction between a natural person and another person in which property, services or money is acquired <u>on credit</u> by that natural person from such other person primarily for personal, family, or household purposes." Id. § 1788.2(e) (emphasis added). Thus, Plaintiffs' Rosenthal Act claims turn on whether the unlawful detainer action KTS filed was an attempt to collect a consumer debt.

Plaintiffs argue that KTS attempted to collect a debt through the unlawful detainer action filed on July 22, 2016, by alleging that Plaintiffs owed money for a period in the past because KTS sought damages from July 19, 2016, onward. (RJN Exh. A.) In essence, Plaintiffs argue that KTS sought to collect rent for a period in the past, even though Plaintiffs had already paid July rent in full.[6] KTS argues that it did not seek past-due rent, but rather future damages from July 19, 2016, for each day Plaintiffs remained in possession through entry of judgment. The complaint in the unlawful detainer action supports KTS, as it did not check the box for "past-due rent" but did check the box seeking damages after July 19. (RJN Exh. A.) Furthermore, KTS notes that the damages sought were contingent, and not due and payable until a court enters judgment declaring them so. (Doc. No. 14 at 10.) The court finds these arguments persuasive, but declines to rule on

---

[6] Plaintiffs argue that CFSD's acceptance of July rent from Plaintiffs waived the Notice of Termination "under applicable California law." (<u>See</u> Doc. No. 13 at 11, 31.) Plaintiffs fail to provide legal support in their brief, instead directing the court to a declaration submitted by their attorney. (<u>See</u> Lickel Decl. ¶¶ 20–22.) The court does not consider legal arguments outside the moving papers, and uses declarations only for factual support. <u>See</u> Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on <u>personal knowledge</u>, set out <u>facts</u> . . .") (emphasis added); <u>Asetek Danmark A/S v. CMI USA, Inc.</u>, 100 F. Supp. 3d 871, 892 (N.D. Cal. Apr. 21, 2015) ("[C]laims, defenses, theories, and arguments must be articulated and be presented with proper support in order for them to be considered by the court.") (internal citation omitted).

this basis because Plaintiffs could not prevail even if KTS had attempted to collect past-due rent.

Even if KTS sought unpaid rent in the unlawful detainer action, Plaintiffs still could not prevail on their Rosenthal Act claims because "residential rent collection is not a consumer credit transaction protected under the Rosenthal Act." Phillips v. Archstone Simi Valley LLC, 2016 WL 7444550, at *5 (C.D. Cal. Dec. 15, 2016). Residential tenancies that require monthly rent paid in advance do not involve any extension of credit by the landlord. "Renting an apartment is not truly a credit transaction" because the landlord "neither sells property on time nor makes funds available to tenants." Ortiz v. Lyon Mgmt. Grp., Inc., 157 Cal. App. 4th 604, 619 (2007). Because Plaintiffs did not acquire their leasehold on credit, no consumer credit transaction occurred between Plaintiffs and CFSD, and the rent paid by Plaintiffs is not a consumer debt under the Rosenthal Act. See Leasure v. Willmark Communities, Inc., 2013 WL 6097944, at *4 (S.D. Cal. Mar. 14, 2013) (concluding that residential rent collection does not qualify as a consumer credit transaction). The cases cited by Plaintiffs to support a different result are inapposite. See Phillips, 2016 WL 7444550, at *4–6 (explaining why Gouskos v. Aptos Village Garage, Inc., 94 Cal. App. 4th 754 (2001) and Koller v. West Bay Acquisitions, LLC, No. C 12-00117 CRB, 2012 WL 2862440 (N.D. Cal. July 11, 2012), which dealt with car repairs and monthly video rentals, respectively, are not analogous to the landlord-tenant relationship).

In an effort to avoid this outcome, Plaintiffs argue that this particular lease with CFSD was acquired on credit, making it a consumer credit transaction. (Doc. No. 13 at 23.) Plaintiffs spend a significant portion of their opposition brief going through CFSD's history with the property in question. When CFSD obtained a loan from the Commission to purchase the property, one of the conditions of the contract required CFSD to offer residential leases to low income individuals for a period of fifty-five years. (Doc. No. 13 at 8.) These leases, subject to the HOME Program, must be renewed absent good cause for termination, which does not include an increase in a tenant's income. 24 C.F.R. 92.253(c). According to Plaintiffs, this situation gives Picazo a property interest until 2052,

and because "she does not pay for the right to force CFSD to renew her lease all the way through to 2052 absent good cause," the lease is property that Plaintiffs obtained on credit. (Doc. No. 13 at 25.) In short, Plaintiffs attempt to extend the 1997 credit transaction between CFSD and the Commission to Plaintiffs, arguing that that "[i]f the lease is a consumer transaction, then the rent that may be alleged due in connection with that lease is a consumer debt because it is owed by reason of the lease." (Doc. No. 13 at 30.) Plaintiffs fail to provide any legal support for that assertion.

The court is not convinced. Although Plaintiffs' lease is subject to the HOME Program and cannot be terminated based on Plaintiffs' income, it is still a month-to-month tenancy that requires rent in advance. Thus, no credit is extended to Plaintiffs. While CFSD may owe a debt to the Commission for the loan it received in 1997, Plaintiffs do not owe anything apart from their monthly rent for the right to renew their lease absent good cause to terminate it.

Therefore, Plaintiffs have failed to establish that there is a probability that they will prevail on their Rosenthal Act claims because the unlawful detainer action was not an attempt to collect a "consumer debt" as defined by the Rosenthal Act. Accordingly, the court grants KTS's anti-SLAPP motion to strike and dismisses Plaintiffs' Rosenthal Act claims.

KTS, as the prevailing defendant, is entitled to recover its attorney's fees and costs. Cal. Civ. Proc. Code § 425.16(c). KTS has three weeks from the date of this order to file a motion attorney's fees and costs.

## II. Summary Judgment – Federal Rule of Civil Procedure 56

KTS also moves for summary judgment on Plaintiffs' FDCPA claims, arguing that KTS is not a debt collector under the FDCPA and KTS did not attempt to collect a debt. Because the court finds that KTS is not a debt collector under the FDCPA, and grants summary judgment on that basis, it does not reach KTS's argument that it did not attempt to collect a debt under the FDCPA.

///

13

17cv1437 JM (BGS)

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). While it is uncontested that KTS meets this definition, KTS argues that it falls within a statutory exception for "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." Id. § 1692a(6)(F)(iii). CFSD retained KTS to terminate Plaintiffs' lease in May 2016. (Ruiz Decl. ¶ 10.) The unlawful detainer action seeking holdover damages, which Plaintiffs allege constituted a false claim for rent that was already paid and triggers the FDCPA, was filed in July 2016. KTS argues that it obtained the alleged debt prior to it being owed in July 2016, and thus 15 U.S.C. § 1692a(6)(F)(iii) applies.

The parties agree that Plaintiffs did not owe rent for July 2016. (See Doc. No. 13 at 21.) Because no money was owed, Plaintiffs argue that there was no debt for KTS to obtain, and thus 15 U.S.C. § 1692a(6)(F)(iii) does not apply. Plaintiffs argue that KTS did not "obtain" a debt in May 2016 because there was no "real, actual debt" to possess. (Doc. No. 13 at 21.) However, "debt," as defined by the FDCPA, encompasses "any obligation or alleged obligation." 15 U.S.C. § 1692a(5). Indeed, the other case Plaintiffs cite, Heathman v. Portfolio Recovery Assocs., LLC, 2013 WL 755674, at *4 (S.D. Cal. Feb. 27, 2013), made this same observation when the court found that the defendant could not escape liability because the alleged debt was nonexistent. Thus, KTS could obtain the alleged obligation, that Plaintiffs owed rent, in May 2016 when CFSD retained KTS to terminate Plaintiffs' lease. See Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1723 (2017) ("[One] might, for example, take possession of a debt for servicing and collection even while the debt formally remains owed another."). KTS would not have initiated the unlawful detainer action against Plaintiffs if CFSD had not retained it to handle matters related to the termination of Plaintiffs' lease in May 2016. The Notice of

14

17cv1437 JM (BGS)

Termination issued by KTS purported to terminate Plaintiffs' lease by July 18, 2016. The unlawful detainer action filed by KTS sought damages for the time Plaintiffs remained on the premises after the lease terminated. Therefore, KTS obtained the alleged debt, the damages that Plaintiffs allege "constituted a misrepresentation as to the amount or nature of an alleged debt," (Doc. No. 1 ¶ 32), prior to default. Consequently, KTS is excluded from the definition of "debt collector" under the FDCPA based on the exception in 15 U.S.C. § 1692a(6)(F)(iii). Because KTS is not a debt collector, Plaintiffs' FDCPA claims fail as a matter of law and KTS is entitled to summary judgment.

In sum, the court grants KTS's motion for summary judgment on Plaintiffs' FDCPA claims.

## CONCLUSION

For the foregoing reasons, the court grants KTS's special motion to strike Plaintiffs' Rosenthal Act claims and KTS's motion for summary judgment on Plaintiffs' FDCPA claims. KTS has *three weeks* from the date of this order to move the court for attorney's fees and costs related to its anti-SLAPP motion.

IT IS SO ORDERED.

DATED: April 2, 2018

_____
JEFFREY T. MILLER
United States District Judge